# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA
# OKLAHOMA CITY DIVISION

| | |
|---|---|
| JEFF McMAHAN, individually and on behalf of all others similarly situated,<br><br>v.<br><br>TOTAL TRUCKING, INC. | Case No.  CIV-22-243-SLP<br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.  Jeff McMahan brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA).

2.  Total Trucking failed to pay McMahan and other hourly workers overtime as required by federal law.

3.  Instead, Total Trucking paid McMahan, and workers like him, the same hourly rate, even when they were working more than 40 hours in a workweek.

4.  This collective action seeks to recover the unpaid wages and other damages owed to McMahan and other hourly workers at Total Trucking.

### JURISDICTION AND VENUE

5.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

7. McMahan performed work for Total Trucking in this District and Division.

**PARTIES**

8. McMahan was, at all relevant times, an employee of Total Trucking.

9. McMahan was an hourly employee of Total Trucking.

10. McMahan worked for Total Trucking from May 2019 until February 2022.

11. McMahan written consent is attached as Exhibit 1.

12. The collective of similarly situated workers sought to be certified is defined as:

> **All hourly employees of Total Trucking, Inc. who were, at any point in the past three years, paid "straight time for overtime."**

13. **Total Trucking, Inc. ("Total Trucking")** is an Oklahoma corporation.

14. Total Trucking's headquarters and principal place of business is in Oklahoma County, Oklahoma.

15. Total Trucking may be served by service upon its registered agent, **Richard E. Parrish, 10444 Greenbriar Pl., Ste. A, Oklahoma City, OK 73159**, or by any other method authorized by law.

**COVERAGE UNDER THE FLSA**

16. At all relevant times, Total Trucking was an employer of McMahan within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17. At all relevant times, Total Trucking has been an employer of the Putative Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all relevant times, Total Trucking has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. During at least the last three years, Total Trucking has had gross annual sales in excess of $500,000.

20. Total Trucking was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

21. Total Trucking employs many workers, including McMahan, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

22. The goods and materials handled, sold, or otherwise worked on by McMahan and other Total Trucking employees and that have been moved in interstate commerce include, but are not limited to, motor vehicles and their component parts.

## FACTS

23. Total Trucking provides hauling services for dirt, rock, and earth in and around Oklahoma City.

24. McMahan was employed as a driver providing hauling services to Total Trucking's clients.

25. McMahan drove a dump truck to and from worksites.

26. McMahan would transport dirk, rock, and earth to and from worksites.

27. None of the items McMahan would transport are hazardous.

28. McMahan's trucks did not have a hazard placard.

29. McMahan was an hourly employee of Total Trucking.

30. Total Trucking did not pay McMahan a salary.

31. Total Trucking did not pay McMahan on a fee basis.

32. Total Trucking paid McMahan by the hour.

33. For example, in February 2022, Total Trucking paid McMahan $17 per hour for drive time.

34. If McMahan did not work an hour, he did not get paid.

35. McMahan was not paid a guaranteed minimum amount of money.

36. McMahan was not paid for a guaranteed minimum number of hours.

37. McMahan reported the hours he worked to Total Trucking on a regular basis.

38. McMahan's hours are reflected in Total Trucking's records.

39. McMahan often worked more than 40 hours in a week.

40. Even when McMahan worked more than 40 hours in a week, he was still paid at the same rate, without any overtime premium.

41. Thus, rather than receiving time-and-a-half as required by the FLSA, McMahan only received "straight-time" pay for overtime hours.

42. This "straight-time-for-overtime" payment scheme violates the FLSA.

43. McMahan worked out of Total Trucking's facility in Oklahoma City.

44. McMahan did not drive for Total Trucking outside of the Oklahoma City area.

45. As part of his driving for Total Trucking, McMahan did not drive to any other states.

46. The other drivers, like McMahan, who performed hauling work for Total Trucking, did not drive out of state.

47. None of these drivers were asked to travel out of state.

48. Total Trucking was well aware of the overtime requirements of the FLSA.

49. Total Trucking knew McMahan was working more than 40 hours per week.

50. Total Trucking knew other hourly workers were working more than 40 hours per week.

51. Total Trucking nonetheless failed to pay proper overtime to certain employees, such as McMahan.

52. Total Trucking knew, or showed reckless disregard for whether, its policy of not calculating and paying overtime at the full, regular hourly rate violated the FLSA.

53. Total Trucking's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

## NECESSITY OF FILING SUIT

54. This isn't the first time Total Trucking has been sued for the same kind of overtime violations.

55. James Isaacs filed suit against Total Trucking in *Isaacs v. Total Trucking, Inc.* ("*Isaacs 1*"), No. 5:20-00996-J, in the Western District of Oklahoma.

56. *Isaacs 1* was conditionally certified as a collective action on January 25, 2021. *Isaacs 1*, ECF No. 20.

57. McMahan did not opt-into *Isaacs 1*.

58. After that matter was resolved, Isaacs filed suit against Total Trucking's joint employers in *Isaacs v. Total Aggregate, LLC* ("*Isaacs 2*"), No. 5:21-cv-00945-J, in the Western District of Oklahoma.

59. Total Trucking is not a defendant in *Isaacs 2*.

60. *Isaacs 2* was conditionally certified as a collective action on February 18, 2022. *Isaacs 2*, ECF No. 31.

61. McMahan opted-into *Isaacs 2* on March 8, 2022. *Isaacs 2*, ECF No. 36.

62. Brian Erwin opted-into *Isaacs 2* on March 18, 2022. *Isaacs 2*, ECF No. 39.

63. Erwin was also not an opt-in plaintiff in *Isaacs 1*.

64. McMahan and Erwin both opted-into *Isaacs 2* before receiving the Court-ordered notice of the collective action.

65. Of the 86 persons identified on the potential collective members list in *Isaacs 2*, only 20 were already plaintiffs in *Isaacs 2*.

66. In other words, McMahan, Erwin, and 66 potential collective members all have potential overtime claims against Total Trucking.

67. Total Trucking knows these 68 persons, who will receive notice in *Isaacs 2* also have potential overtime claims against Total Trucking.

68. Under the FLSA, the statute of limitations continues to run as to each plaintiff until they file written consent to join the action. 29 U.S.C. § 216(b).

69. Prior to filing this lawsuit, McMahan's counsel (the same counsel as Isaacs and the *Isaacs 1* and *Isaacs 2* plaintiffs) requested Total Trucking agree to tolling of these persons claims until the Parties could at least explore post-certification resolution of *Isaacs 2*.

70. A letter from McMahan's counsel explaining the conservation of the Parties' and judicial resources was sent to Total Trucking, through its counsel, to try to avoid filing this lawsuit. Ex. 2, Correspondence to Total Trucking.

71. After conferring with Total Trucking's counsel, McMahan even gave Total Trucking additional time to consider the tolling offer—until Tuesday, March 22, 2022.

72. Total Trucking had sufficient time—a whole week—to consider the tolling offer.

73. Total Trucking nonetheless refused to toll these individuals' claims.

74. Total Trucking knows that, without a tolling agreement, McMahan, Erwin, and the potential collective members must file suit and opt-in to stop their statute of limitations.

75. Total Trucking knows that, by refusing a tolling agreement and forcing additional litigation, McMahan and the potential collective members will incur attorneys' fees in addition to those in *Isaacs 2*.

76. Total Trucking knows that, by refusing a tolling agreement and forcing additional litigation, McMahan and the potential collective members will incur litigation costs in addition to those in *Isaacs 2*.

77. Total Trucking knows that, by refusing a tolling agreement and forcing additional litigation, Total Trucking will incur its own attorneys' fees in addition to those in *Isaacs 2*.

78. Total Trucking knows that, by refusing a tolling agreement and forcing additional litigation, Total Trucking will incur its own litigation costs in addition to those in *Isaacs 2*.

79. Total Trucking knows that, by refusing a tolling agreement and forcing additional litigation, Total Trucking will cause strain on judicial resources in addition to *Isaacs 2*.

80. Knowing all these things, Total Trucking choose to force plaintiffs to file suit.

81. McMahan wanted to enter into a tolling agreement with Total Trucking so that he and the Potential Collective Members would not incur additional attorneys' fees.

82. McMahan wanted to enter into a tolling agreement with Total Trucking so that he and the Potential Collective Members would not incur additional litigation costs.

83. McMahan wanted to enter into a tolling agreement with Total Trucking so that Total Trucking would not incur additional attorneys' fees.

84. McMahan wanted to enter into a tolling agreement with Total Trucking so that Total Trucking would not incur additional litigation costs.

85. McMahan wanted to enter into a tolling agreement with Total Trucking so that he and the Potential Collective Members would not cause additional strain on judicial resources.

86. If McMahan had not filed suit, the statute of limitations for his claims against Total Trucking would continue to run.

87. McMahan was forced to initiate and maintain this lawsuit—and to incur attorneys' fees and costs—because Total Trucking would not consent to tolling.

### COLLECTIVE ACTION ALLEGATIONS

88. McMahan incorporates all other allegations.

89. Total Trucking's illegal "straight time for overtime" policy extends well beyond McMahan.

90. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *see also, e.g., Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014

WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

91. Total Trucking has paid numerous hourly workers according to the same unlawful scheme.

92. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

93. The workers impacted by Total Trucking's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CAUSE OF ACTION–OVERTIME VIOLATIONS OF THE FLSA

94. McMahan incorporates all other allegations.

95. By failing to pay McMahan and the Putative Collective Members overtime at 1.5 times their regular rates, Total Trucking violated the FLSA. 29 U.S.C. § 207(a).

96. Total Trucking owes McMahan and the Putative Collective Members the difference between the rate actually paid and the proper overtime rate.

97. Because Total Trucking knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Total Trucking owes these wages for at least the past three years.

98. Total Trucking also owes McMahan and the Putative Collective Members an amount equal to the unpaid overtime wages as liquidated damages.

99. McMahan and the Putative Collective Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## **RELIEF SOUGHT**

100. Wherefore, McMahan prays for judgment against Total Trucking as follows:

    (a)    For an order certifying this case as a collective action for the purposes of the FLSA claims;

    (b)    For an order finding Total Trucking liable for violations of federal wage laws with respect to McMahan and all Putative Collective Members covered by this case;

    (c)    For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to McMahan and all Putative Collective Members covered by this case;

    (d)    For a judgment awarding McMahan and all Putative Collective Members covered by this case their costs of this action;

    (e)    For a judgment awarding McMahan and all Putative Collective Members covered by this case their attorneys' fees;

    (f)    For a judgment awarding McMahan and all Putative Collective Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

    (g)    For all such other and further relief as may be necessary and appropriate.

Dated: <u>Mar. 23, 2022</u>

- 12 -

Respectfully submitted,

By: */s/ Matthew S. Parmet*
  **Matthew S. Parmet**
   TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**

- 12 -